## Manorhaven Capital LLC v Marc J. Bern & Partners, LLP

2024 NY Slip Op 34297(U)

December 2, 2024

Supreme Court, New York County

Docket Number: Index No. 654869/2022

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

-------------------------------------------------------------------------------X

MANORHAVEN CAPITAL LLC

|  |  |
|---|---|
| **INDEX NO.** | 654869/2022 |

Plaintiff,

|  |  |
|---|---|
| **MOTION DATE** | 06/27/2024 |

- v -

MARC J. BERN & PARTNERS, LLP,

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 012 |

Defendant.

**DECISION + ORDER ON MOTION**

-------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 012) 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 222, 223

were read on this motion to/for                JUDGMENT - SUMMARY                      .

Upon the foregoing documents, Manorhaven Capital LLC (**Manorhaven**)'s motion (Mtn. Seq.

No. 012) for summary judgment against Marc J. Bern & Partners LLP (**Bern**) is GRANTED.

Bern's cross-motion to compel discovery is DENIED.

**THE RELEVANT FACTS AND CIRCUMSTANCES**

Reference is made to (i) a Decision and Order of this Court (the **Prior Decision;** NYSCEF Doc.

No. 150), dated March 5, 2024 and (ii) an agreement (the **Agreement**; NYSCEF Doc. No. 168),

dated August 16, 2021, by and between Manorhaven and Bern. The facts of this case were

discussed in the Prior Decision. Familiarity is presumed.

As relevant, pursuant to the Agreement, the parties agreed that Manorhaven was to provide

investment bank services to Bern for a substantial debt financing and Bern was to pay

**654869/2022   MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP**                                    Page 1 of 10
**Motion No.  012**

1 of 10

Manorhaven "at each closing" of the Transaction a two percent (2%) cash fee computed on the amounts of loan proceeds "actually received by the Company" (NYSCEF Doc. No. 168 § 3).[1] The term of the Agreement was to end on the earlier of (i) the final closing of the Transaction and (ii) December 31, 2021 (*id.,* at § 5). Pursuant to Section 5 of the Agreement, the parties also agreed to a 12-month tail period following the expiration of the term of the Agreement pursuant to which Manorhaven would be compensated if Bern entered into a Transaction provided that Manorhaven kept Bern apprised of the status of conversations with potential lenders set forth on a schedule of potential lenders that Manorhaven was obligated to deliver to Bern at the end Agreement:

5. The term of this Agreement shall extend until the earlier of: (i) the final closing of the Transaction and (ii) December 31, 2021 (the "Term"). However, should the Company be actively involved in discussions regarding the Transaction with an investor or have signed a term sheet or similar document regarding the Transaction, the engagement term shall be extended until the closing of the respective Transaction or termination thereof in writing. Any such expiration shall not (except as provided herein) affect the indemnification, confidentiality provisions or the Company's obligation to reimburse Manorhaven for Manorhaven Expenses as set forth herein, all of which shall remain in full force and effect In addition, any such expiration of this Agreement shall not affect the Company's obligation to compensate Manorhaven, as outlined in section 3, for any offering undertaken by the Company ***with any lender or investor contacted*** by Manorhaven during the term of this Agreement for a period of twelve (12) months following the date of expiration of this Agreement; provided that, Manorhaven shall have kept the Company apprised on a contemporaneous and continuing basis with the names, key contact information and status of conversations with potential lenders for the Transaction, which information shall be set forth in Schedule 1, as amended from time to time.

(*id.* [emphasis added]).

---

[1] The words "at each closing" contemplate multiple advances and the agreement reflects the understanding that Manorhaven would be compensated at each advance.

After the Agreement was executed, Manorhaven performed due diligence on Bern's business, prepared a lender presentation and financial model and ultimately contacted (and was in communication with) a number of potential lenders including D.E. Shaw (*e.g.*, NYSCEF Doc. No. 35) on or before September 30, 2021 (*i.e.,* three months prior to the expiration date of the Agreement). D.E. Shaw and Manorhaven entered into a Non-Disclosure Agreement to facilitate the review of Bern's business and Manorhaven put together a data room and opened up the data room for Bern's access. Initially, according to Michael Feldstein, Vice President of D.E. Shaw, D.E. Shaw did not move forward with the financing because they lacked the capacity to do the transaction with a large mass tort firm loan but over time the group became more comfortable and ultimately D.E. Shaw and its affiliates entered into a $250 million credit facility with D.E. Shaw:

> Q. Reviewing this email chain, does it refresh your recollection about ***reviewing a deck about the Bern firm in September of 2021***?
> MR. FARINA: Objection to form.
>     (Witness reviewing document.)
> A. I see that I reviewed David's email. I don't recall whether I also reviewed a deck.
> Q. Did D.E. Shaw move forward with the financing presented to it by Manorhaven?
> MS. MINTZ: Objection to form.
> MR. FARINA: Objection to form.
> Q. Did Manorhaven present to D.E. Shaw a financing opportunity?
> A. It did.
> MR. FARINA: Objection to form.
> Q. And that financing opportunity was of the Bern firm.
> A. It was.
> Q. Why did D.E. Shaw not move forward?
> MR. FARINA: Objection to form.
> A. D.E. Shaw did not move forward for a variety of reasons, as far as I recall.
> Q. Can you recall any one reason?
> A. I recall that at the time, we were very busy with other deals and thinking that we didn't have the bandwidth to underwrite a large mass tort law firm loan at the moment. I also think over time, the group gained more exposure to and knowledge of mass tort financings, and I think in fall of 2021, we were less comfortable underwriting mass tort financings than we were when we ultimately did the deal. Among other reasons.

**654869/2022  MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP**                    **Page 3 of 10**
**Motion No.  012**

3 of 10

(NYSCEF Doc. No. 170 at 31, lines 15-25 and at 32, lines 1-25).

…

Q. The parties to this agreement are LITF Management LLC and Manorhaven Capital LLC, correct?

A. Correct.

Q. What is LITF Management LLC?

MR. FARINA: Objection to form.

A. LITF Management LLC is a wholly-owned subsidiary of D.E. Shaw & Co. LP.

Q. How does D.E. Shaw use LITF Management LLC?

MR. FARINA: Objection to form.

A. LITF Management LLC enters into NDAs and engagement letters on behalf of D.E. Shaw in connection with litigation financing investments.

Q. If you flip to the final page of the agreement, page -- it's page 5 the agreement Bates-stamped ending in 971. The signatory for LITF Management LLC is Martin Lebwohl. Do you see that?

A. I see that.

Q. Who is Martin Lebwohl?

MS. MINTZ: Objection to form.

A. Martin Lebwohl is -- or possibly -- yes, is the general counsel of D.E. Shaw.

MS. SLOSS: I'll now ask the court reporter to mark for identification Feldstein Exhibit 8, which is another email chain. This is dated November 4, 2021, Bates-stamped MANOR17086 through 17089.

---

(Feldstein Exhibit 8 was marked for identification.)

---

Q. After LITF and Manorhaven entered into the NDA, did LITF access a data room setup by Manorhaven?

MS. MINTZ: Objection to form.

MR. FARINA: Objection to form.

A. I do not specifically recall.

Q. Looking at the first page of this exhibit, in the middle of the first page, there is an email from Mr. Zachary Marans to Megan Colville, and he writes, Matt, please send out data room access. Do you see that?

A. I do see that.

Q. And at the top of this exhibit, Mr. Brown writes to Mr. Gallagher, You should see the permission now. Please let us know if you have any issues accessing the data room. We look forward to continuing the conversation. After reviewing that email, does that indicate to you that D.E. Shaw was granted access to a data room set up by Manorhaven?

MS. MINTZ: Object to the form.

MR. FARINA: Objection to form.

A. It indicates to me that Manorhaven intended to provide access and that we should have had access at that point, but I -- I don't recall whether we, in fact, had access or accessed it independently.

Q. Aside from a data room, did D.E. Shaw review materials provided to it by Manorhaven regarding the Bern firm?

MS. MINTZ: Objection to form.

MR. FARINA: Objection to form.

A. I do not independently recall whether we reviewed materials provided by Manorhaven.

Q. Have you ever reviewed a financial model of the Bern firm?

A. I have.

MR. FARINA: Objection to form.

Q. When did you review a financial model

(*id.,* at 40-42).

…

A. At a high level, the credit agreement contemplated a closing amount of $200 million to be advanced to Bern, its lenders, preexisting lenders, a portion of which would be retained by the two lenders on the credit agreement, and then also distributed to various parties for expenses. And a commitment to fund an additional $50 million over time in exchange for an all-assets lien on the firm, and other collateral, and a waterfall that varied by case, to be used to repay the lenders, from fees and cost recovered by the firm.

(*id.,* at 75, lines 1-7).

On September 22, 2021, Manorhaven informed Bern of the firms that Manorhaven was covering (which firms included D.E. Shaw [NYSCEF Doc. No. 33]) and on January 4, 2022 at the conclusion of the term of the Agreement and after Manorhaven sent Bern a letter stating, among other things, that in accordance with Section 5 of the Agreement Manorhaven was attaching a Schedule 1 to the letter that contained a list of entities contacted by Manorhaven, including D.E. Shaw and requesting reimbursement for its expenses (NYSCEF Doc. Nos. 11 and 33).[2] The attached Schedule also includes D.E. Shaw.

---

[2] Although the Schedule lacked the words "Schedule 1" at the top of it, the Court previously held in the Prior Decision that the missing words "Schedule 1" were immaterial.

**654869/2022  MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP**      **Page 5 of 10**
**Motion No.  012**

[* 5]

Subsequently, on February 10, 2022, Bern emailed Manorhaven informing them that he had secured financing from a source that was not contacted by Manorhaven,[3] (Calumet), who was in fact not listed on the Schedule 1.

Thereafter, and after some conversations with other potential lenders, as indicated above, Bern and D.E. Shaw entered into a $250 million credit facility on November 28, 2022 – *i.e.*, within the tail period covered by the Agreement (NYSCEF Doc. Nos. 172 and 180). The initial advance was $200 million, $183,194,856.72, Bern had D.E. Shaw pay off its existing debt and approx. $5.6 million to Alter Domus and certain other third-party advisers and service providers (*id.*). An additional approximately $23 million has been advanced since then to Bern or at Bern's direction, or a total of $233,265,817.04 (NYSCEF Doc. No. 173). Bern has not paid Manorhaven the agreed upon fee pursuant to the Agreement.

On December 16, 2022, Manorhaven sued alleging breach of contract claim based on Bern's failure to pay the Fee. Thereafter, Bern moved to dismiss and the Court denied the motion. Now, Manorhaven moves for summary judgment. Bern filed a cross-motion to compel Manorhaven to respond to Bern's Second Notice for Discovery and Inspection and for an extension of the deadlines for the completion of non-party depositions and expert discovery (NYSCEF Doc. No. 187).

## DISCUSSION

---

[3] Although not relevant to the instant motion, the parties indicate that this reference was to a Calumet who ultimately did not do a deal with Bern.

**654869/2022 MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP** Page 6 of 10
**Motion No. 012**

[* 6]

On a motion for summary judgment, the movant "must make a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986], citing *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The opposing party must then "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact" that its claim rests upon (*Zuckerman v New York*, 49 NY2d 557, 562 [1980]).

To prevail upon a cause of action for breach of contract, a plaintiff must prove that: (i) a contract exists; (ii) plaintiff performed in accordance with the contract; (iii) the defendant breached its contractual obligations; and (iv) the defendant's breach resulted in damages (*34-06 73, LLC v Seneca Ins. Co.*, 39 NY3d 44, 52 [2022]).

As discussed above, the record before the Court includes (i) the existence of a valid contract (*i.e.*, the Agreement), (ii) that Manorhaven performed under the Agreement by, among other things, contacting the various lenders providing them with relevant due diligence materials and discussing with them the proposed transaction untll they were told by D.E. Shaw that D.E. Shaw as not interested, (iii) Bern's breach of its contractual obligations to pay the monies due under the Agreement and (iv) that Bern's breach resulted in $4,665,316.34 in damages.

Bern is simply not correct that Manorhaven had continuing obligations to hound D.E. Shaw after D.E. Shaw initially indicated that it was not interested in doing the deal with Bern and that Manorhaven was required to provide continual updates as to these efforts without notice from Bern that D.E. Shaw had reengaged with them during the tail period of the Agreement. To the

654869/2022  MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP Page 7 of 10
Motion No.  012

7 of 10

extent that Bern engaged with D.E. Shaw during the tail period and did not mention a word to Manorhaven about it (and in fact had told them that they were securing financing from other lenders not on the list), Bern can not now avoid its obligation to pay Manorhaven arguing that Manorhaven should have done more or communicated more; It simply is irrelevant that Bern may have been referring to another lender that did not provide the financing. Thus, there are no issues of fact as to whether Manorhaven is entitled to summary judgment on the issue of liability.

As to damages, the parties do not dispute that Manorhaven is not entitled to contract damages based on the face amount of the facility of $250 million or that there were $233,265,817.04 of loan proceeds. At 2%, this equates to a $4,665,316.34 fee due Manorhaven.

According to Bern, however, because Bern caused D.E. Shaw to send the money it actually received to others – *i.e.*, to pay Bern's other bills (including the retirement of certain existing debt), Bern actually only received $44,480,353.72 such that if there is any money due at all it should only be on that amount.[4] Bern is wrong.

Bern's proffered interpretation is both at odds with the Credit Agreement which indicates that the advances are "to the Borrower" (NYSCEF Doc. No. 180, § 2.1[a][i]) and otherwise would produce obvious absurd results – i.e., Bern could direct the entire proceeds of $250 million be sent to others including as prepayment for new obligations and no fee would be due under the

---

[4] According to Marc Bern, to the extent that the parties changed the words from "gross" to "actually received," this change reflects that understanding. The Court notes that in support of this incorrect contract interpretation he adduces the affidavit of Kathleen Lauster, a CFA. This is patently improper. The Agreement is not ambiguous and in any event, the affidavit can not be considered for legal conclusions or to interpret contact language generally. *Colon v. Rent-A-Ct.*, 276 AD3d 58, 61 (1st Dep't 2000).

Agreement (*In re Lipper Holdings, LLC*, 1 AD3d 170, 171 [1st Dept 2003]).  For the avoidance of doubt, the change in the language of the draft of the Agreement to the final version of the Agreement merely reflects the understanding that Manorhaven would not be paid a fee based on the gross amount of the loan ($250 million) and would only be paid based on money in which Bern "actually received" "at each closing."

Thus, there are no issues of fact on the issue of liability or damages and Manorhaven may submit judgment.

For an avoidance of doubt, Bern's cross-motion is DENIED.

The Court has considered the parties' remaining arguments and finds them unavailing.

Accordingly, it is

ORDERED that Manorhaven's motion for summary judgment is GRANTED and Manorhaven may submit judgment; and it is further

ORDERED that Bern's cross-motion to compel discovery is DENIED.

20241202094703AD0RR0K4148ACE732EB4B5D97344510A5844C6B

| 12/2/2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | **ANDREW BORROK, J.S.C.** | |
| CHECK ONE: | X  CASE DISPOSED | | ☐  NON-FINAL DISPOSITION | |
| | X  GRANTED | ☐  DENIED | ☐  GRANTED IN PART | ☐  OTHER |

**654869/2022   MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP**          Page 9 of 10
**Motion No.  012**

APPLICATION:　　　☐　SETTLE ORDER　　　☐　SUBMIT ORDER

CHECK IF APPROPRIATE:　☐　INCLUDES TRANSFER/REASSIGN　☐　FIDUCIARY APPOINTMENT　☐　REFERENCE

654869/2022　MANORHAVEN CAPITAL LLC vs. MARC J. BERN & PARTNERS, LLP
Motion No. 012

Page 10 of 10